JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Jayant W. Tambe
Aviva Warter Sisitsky

*Attorneys for the Plaintiffs*
*Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re:                                                         :   Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                       :   Case No. 08-13555 (JMP)
                                                               :
         Debtors.                                              :   (Jointly Administered)
                                                               :
---------------------------------------------------------------x
                                                               :
LEHMAN BROTHERS HOLDINGS INC. and                              :
LEHMAN BROTHERS SPECIAL                                        :   Adv. Proc. No. 12-01979
FINANCING INC.                                                 :
                                                               :
         Plaintiffs,                                           :
                                                               :
   -against-                                                   :
                                                               :
CREDIT PROTECTION TRUST 283, FSA                               :
ADMINISTRATIVE SERVICES, LLC, as                               :
Trustee for the CREDIT PROTECTION                              :
TRUST 283 and FINANCIAL SECURITY                               :
ASSURANCE INC. n/k/a ASSURED                                   :
GUARANTY MUNICIPAL CORPORATION                                 :
         Defendants.                                           :
---------------------------------------------------------------x

**AMENDED ADVERSARY COMPLAINT AND CLAIM OBJECTION**

Lehman Brothers Holdings Inc. ("LBHI"), on behalf of itself and as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), and Lehman Brothers Special Financing Inc. ("LBSF") (and together with LBHI's affiliated debtors in the above-referenced chapter 11 cases, the "Debtors"), as and for their Adversary Complaint and Claim Objection against the Credit Protection Trust 283 ("CPT 283"), FSA Administrative Services, LLC, as Trustee for the Credit Protection Trust 283 and Financial Security Assurance Inc. ("Assured"), now known as Assured Guaranty Municipal Corporation, hereby allege as follows:

## INTRODUCTION

1. This action seeks to (a) disallow and expunge in their entirety tens of millions of dollars in claims filed by CPT 283 against LBSF and LBHI, which bear no relation to any actual damages suffered by CPT 283 and are premised entirely on impermissible and unenforceable penalty provisions in an ISDA Master Agreement between LBSF and CPT 283, dated as of February 8, 2008 (the "Master Agreement" and together with the Schedule thereto and the Confirmations entered into thereunder, the "Swap Agreement"),[1] and (b) recover approximately $67,327,208, plus default interest.

2. CPT 283's proofs of claim, numbers 3931, 3932, 6948, 6949, and 27982, each demand from the Debtors approximately $43,830,089 in connection with the termination of the transaction under the Swap Agreement with LBSF.

3. The Swap Agreement between LBSF and CPT 283 provided that the bankruptcy filing of either LBHI or LBSF or an uncured payment default would constitute an Event of Default that once ripened through the proper delivery of the applicable notices under the Swap Agreement, would give CPT 283 the right to terminate the contract. A termination based on an

---

[1] As required by the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filling Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, dated July 2, 2009 [Docket No. 4271] (the "Bar Date Order"), on September 14, 2009, CPT 283 submitted its "Derivatives Questionnaire" in connection with certain of the CPT 283 Claims.

-2-

uncured payment default purportedly triggers a Penalty Provision (defined below) contained in the Swap Agreement, while a termination based on a bankruptcy filing does not.

4. On September 15, 2008, LBSF's Credit Support Provider under the Swap Agreement, LBHI, filed its petition for chapter 11 relief in this Court. Although LBHI's filing gave rise to an Event of Default under the Swap Agreement, CPT 283 elected not to terminate the transaction under the Swap Agreement with LBSF on this ground.

5. Instead, CPT 283 waited one week, until September 22, 2008, when LBSF failed to make a fixed premium payment under the Swap Agreement, to exercise its right to terminate the transaction under the Swap Agreement. At that time, CPT 283 sent the Debtors a Notice, dated September 29, 2008, in which CPT 283 terminated the transaction under the Swap Agreement as a result of such missed payment, and designated September 29, 2008 as the "Early Termination Date." Four days later, on October 3, 2008, LBSF filed its petition for chapter 11 relief in this Court.

6. As of September 29, 2008, the Early Termination Date, the mark-to-market value of the Swap Agreement, less unpaid amounts, was approximately $67,327,208 in favor of LBSF.

7. CPT 283 has attempted in its proofs of claim to turn the approximately $67,327,208 asset of the Debtors into an approximately $43,830,089 liability through the application of one provision in the Swap Agreement, which application is impermissible and unenforceable under both the laws of the State of New York and applicable bankruptcy law.

8. The Swap Agreement required CPT 283 to calculate a termination payment on the purported Early Termination Date based on a Loss calculation, which under the Swap Agreement is limited to actual damages, namely, the costs and damages actually incurred as a result of the early termination.

9. CPT 283 did not provide the Debtors with any such calculation, stating in its Calculation Statement that "no termination payment" was owed to the Debtors. Instead, CPT 283 invoked a penalty provision in the Swap Agreement, which it claims in its Calculation Statement was triggered when LBSF failed to make a fixed premium payment to CPT 283 during the short time period between the dates on which the Credit Support Provider, LBHI, and LBSF filed their respective chapter 11 cases. The attempt of CPT 283 to use the penalty provision in the Swap Agreement, if sustained, would have an approximately $111 million negative impact on the LBSF creditors, comprised of the $67,327,208 Loss which CPT 283 would avoid having to pay to LBSF and the $43,830,089 windfall payment which LBSF would have to pay to CPT 283.

10. By reason of the failure of LBSF to make a single premium payment under the Swap Agreement immediately before it commenced its bankruptcy case, CPT 283 seeks under the penalty provision to be both relieved from its obligations under the Swap Agreement *and* reap a windfall through payment of a Makewhole Amount (the "<u>Penalty Provision</u>") (<u>See</u> the Schedule at Part I(h)).

11. The application of the Penalty Provision must be disallowed in its entirety on the ground that the benefit to be realized by CPT 283 would bear no relationship to the damages actually incurred by CPT 283, and therefore the Penalty Provision is impermissible and unenforceable under the laws of the State of New York and the applicable bankruptcy law.

12. Accordingly, by this Adversary Complaint and Claim Objection, LBSF hereby seeks to disallow and expunge the CPT 283 Claims (as such term is defined below) in their entirety, and seeks a judgment against CPT 283 and Assured in the amount of $67,327,208, plus

interest, attorney's fees, costs and other expenses, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

13. The statutory predicates for the relief requested herein are (a) sections 105, 365(e), 502, 541, 542 and 562 of title 11 of the United States Code (the "Bankruptcy Code"), (b) Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (c) sections 2201 and 2202 of title 28 of the United States Code.

14. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Court has retained jurisdiction over this matter pursuant to Section 14.1 of the Plan and paragraphs RR and 77 of the order confirming the Plan.

15. This Court has personal jurisdiction over CPT 283 due to the filing of the CPT 283 Claims in LBSF and LBHI's chapter 11 cases.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES

17. On September 15, 2008 and October 3, 2008, LBHI and LBSF, respectively, commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. LBSF's chapter 11 case has been consolidated with LBHI's chapter 11 case for procedural purposes only, and those cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). LBHI's and LBSF's principal places of business are located at 1271 Sixth Avenue, New York, New York 10020.

18. On December 6, 2011, the Court approved and entered an order confirming the Plan. The Plan became effective on March 6, 2012. Pursuant to the Plan, LBHI, as Plan

Administrator, is authorized to prosecute litigation claims on behalf of its estate and LBSF's estate and interpose and prosecute objections to claims against the estates.

19.    CPT 283 is a common law trust organized and existing under the laws of the State of New York. FSA Administrative Services, LLC, a New York limited liability company, is the Trustee for CPT 283. Upon information and belief, Assured is a New York corporation. Upon information and belief, Assured, which issued a policy guaranteeing the obligations of CPT 283, is the sole beneficiary of CPT 283. Upon information and belief, the principal place of business for both FSA Administrative Services, LLC and Assured is located at 31 West 52nd Street, New York, NY 10019.

20.    CPT 283 is what is known as a "transformer" entity, so called because CPT 283, an entity established by Assured, acts to transform Assured's relationship with its customer, LBSF, from that of insurer-insured to swap counterparty. To do this, and as a critical inducement for LBSF to enter into the Swap Agreement, Assured issued that certain Financial Guaranty Insurance Policy No. 51896-N (the "Policy") in favor of LBSF insuring the obligations of CPT 283 under the Swap Agreement, such that if a termination payment is owed to the Debtors under the Swap Agreement, Assured would be required to make the termination payment to LBSF under the Swap Agreement and the underlying Financial Guarantee Insurance Policy.

**BACKGROUND**

**I.    The Proofs Of Claim**

21.    On April 23, 2009, CPT 283 filed proofs of claim, numbers 3931 and 3932 in the respective bankruptcy cases of LBSF and LBHI, which relate to the Swap Agreement and a guarantee. On August 3, 2009, CPT 283 filed two additional proofs of claim, numbers 6948 and 6949 in the respective bankruptcy cases of LBSF and LBHI, which purportedly amended the

proofs of claim numbers 3938 and 3937 to conform to the requirements of the Bar Date Order. On September 22, 2009, CPT 283 filed yet another proof of claim number 27982 in the bankruptcy case of LBHI, which purportedly asserts a claim against LBHI on the basis of that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI dated June 9, 2005. Proofs of claim numbers 6948, 6949 and 27982[2] are collectively referred to herein as the "CPT 283 Claims."

22. On September 14, 2009, CPT 283 submitted its Derivatives Questionnaire in connection with the CPT 283 Claims against LBSF. The Derivatives Questionnaire included, among other things, CPT 283's basis for the application of the Penalty Provision and calculation of a penalty payment, which CPT 283 claims is owed to it by the Debtors.

## II. The Relevant Provisions Of The Master Agreement

23. This adversary proceeding and claim objection concern the application of the Swap Agreement between CPT 283 and LBSF, dated as of February 8, 2008.

24. In February 2008, CPT 283 and LBSF entered into the Swap Agreement, which governed a Credit Derivative Transaction involving a "basket" of approximately ninety-seven (97) separate reference entities.[3]

25. Credit derivative transactions involve contracts that afford protection against the risk of a default of a particular entity known as the "Reference Entity." The buyer of credit protection in a credit derivative transaction makes periodic fixed payments to the seller of the

---

[2] Claim numbers 3931 and 3932 have been expunged and disallowed pursuant to the Order Granting Debtors' Fifth Omnibus Objection To Claims (Amended And Superseded Claims) (Docket No. 9275).

[3] The parties' contract was comprised of the Master Agreement, Schedule and a Confirmation. Capitalized terms used in this Adversary Complaint and Claim Objection and not defined have the meaning ascribed to them in the Master Agreement with respect to any particular Credit Derivative Transaction. The Swap Agreement is governed by New York law. (See Schedule to the Master Agreement at Part 4(h)).

credit protection until the end of the term of the credit derivative transaction or until a "Credit Event" occurs.[4]

26. On September 29, 2008, the Early Termination Date, the Credit Derivative Transactions under the Swap Agreement had a mark-to-market value substantially in favor of LBSF.

### A. Terms Relating To The Bankruptcy Event Of Default And Termination

27. The bankruptcy filing by LBHI, the Credit Support Provider under the Swap Agreement, constituted an Event of Default under Section 5(a)(vii)(4) of the Master Agreement. Section 5(a)(vii)(4) provides in relevant part:

> **5. Events of Default and Termination Events**
>
> (a) *Events of Default*. The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any of the following events constitutes an event of default (an "Event of Default") with respect to such party:—
>
> ***
>
> (vii) Bankruptcy. The party, [or] any Credit Support Provider of such party [. . .] (4) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation [….]

### B. CPT 283 Elected Not To Terminate The Swap Agreement On Account Of LBHI's Bankruptcy Filing

28. Under Section 5(a)(vii) of the Master Agreement, the filing of a chapter 11 case by any Credit Support Provider under the Swap Agreement constitutes an Event of Default under the Swap Agreement. Accordingly, the chapter 11 filing of LBHI (the Credit Support Provider

---

[4] Reference Entity and Credit Event are defined in the ISDA 2003 Credit Derivatives Definitions at Sections 2.1 and 4.1, respectively. The Credit Derivatives Definitions are incorporated by reference in their entirety into the Confirmation under the Swap Agreement.

for LBSF under the Swap Agreement) resulted in the occurrence of an Event of Default under the Swap Agreement, which entitled CPT 283 to terminate the transaction under the Swap Agreement.

29. CPT 283 did not exercise its right under the Swap Agreement, however, to terminate the Swap Agreement on account of the occurrence of such event.

### C. Terms Relating To A Failure To Pay Event Of Default

30. Section 2(a)(i) of the Master Agreement provides that, "[e]ach party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement." (Master Agreement, § 2(a)(i)). Pursuant to the Confirmation, LBSF, as the credit protection buyer, was required to make quarterly fixed payments to CPT 283 on the dates specified therein, including September 22, 2008. (See Confirmation, p.1 and Standard Terms Supplement, p.7).

31. Pursuant to Section 5(a)(i) of the Master Agreement, a failure to make any payment when due, that is not timely cured after appropriate notice, constitutes an Event of Default. Section 5(a)(i) of the Master Agreement provides in relevant part:

> *Failure to Pay or Deliver*. Failure by the party to make, when due, any payment under this Agreement or delivery under Section 2(a)(i) or 2(e) required to be made by it if such failure is not remedied on or before the third Local Business Day after notice of such failure is given to the party; ….

(Master Agreement, § 5(a)(i)).

### D. The Impermissible And Unenforceable Penalty Provision

32. Section 6(e) of the Master Agreement provides that payments due and owed under the Master Agreement on early termination shall be calculated in accordance with the "Loss" methodology and measured by "Second Method."

33. Section 6(e)(i)(4) of the Master Agreement defines Loss and Second Method as follows:

> If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

(Master Agreement, § 6(e)(i)(4)).

34. In other words, pursuant to the Loss and Second Method provisions of the Swap Agreement, if upon the Early Termination Date the Defaulting Party is "in-the-money" on the Terminated Transactions (that is, the mark-to-market value is in its favor), the Non-defaulting Party would be required to pay the amount of that gain to the Defaulting Party.

35. Part I(h) of the Schedule modifies Section 6(e)(i)(4) of the Master Agreement in certain specified situations. Part I(h) provides, in relevant part:

> **Part I. Termination Provisions**
>
> (h)    **Payments on Early Termination**. "Loss" and "Second Method" will apply for the purposes of Section 6(e) of this Agreement; <u>provided</u>, <u>however</u>, that
>
> (a)    Section 6(e) shall apply only where an Early Termination Date is designated by Party A [LBSF] after an FSA Event of Default has occurred and is continuing;
>
> (b)    with respect to an Early Termination Date designated as a result of an Event of Default with respect to Party A [LBSF. . . . ]
>
>> (i)    Party A shall pay to Party B [i.e., CPT 283] on the Early Termination Date
>>
>>> (A)    the Accrued Fixed Payment Amount *and*
>>>
>>> (B)    if such Early Termination Date is designated as a result of an Event of Default with respect to Party A described in Section 5(a)(i) [a failure to pay or perform] or Section 5(a)(viii) [merger without

> assumption], any applicable Makewhole Amount;
> [. . . .] **and**
>
> (iii) no other termination payment shall be payable by either party and neither party shall have any further liability in respect of termination of this Agreement or any Terminated Transaction.

(Schedule, Part I(h)) (emphasis added).

36. By reason of the proviso to Part I(h) of the Schedule, if an Event of Default occurs with respect to LBSF (but <u>not</u> CPT 283), the parties would be relieved from any further liability in respect of termination, in which event LBSF would not be entitled to any payment calculated under the Loss provision. In addition, if the Event of Default relates to any failure by LBSF to pay any amount due under the Swap Agreement, LBSF would be required to pay to CPT 283, in addition to any accrued Fixed Payment Amount, the Makewhole Amount. In contrast, the Schedule contains no special payment provisions modifying Section 6(e) in the event of the occurrence of an Event of Default relating to CPT 283.

37. The effect of the Penalty Provision set forth in the proviso to Part I(h) of the Schedule is to produce a lopsided result, which exclusively favors CPT 283 and unduly punishes LBSF and its creditors. As a result of LBSF's failing to make a single premium payment that happened to fall due between the respective dates on which LBHI and LBSF filed bankruptcy cases (and after LBHI's bankruptcy filing had already triggered an Event of Default), CPT 283 seeks to obtain through the Penalty Provision the economic equivalent of the future premiums to which it would have been entitled if the Credit Derivative Transactions had not been terminated, while being relieved of any obligation to provide the on-going credit protection to which such premiums relate. In other words, by invoking the Penalty Provision, CPT 283 seeks all of the future benefits of the Credit Derivative Transactions without any of the burdens thereunder.

### E. Termination By CPT 283 Of The Swap Agreement With LBSF

38. If an Event of Default with respect to a party has occurred and is then continuing, the Non-defaulting Party may, on notice to the Defaulting Party specifying the relevant Event of Default, designate an Early Termination Date in respect of the outstanding Credit Derivative Transactions under the Swap Agreement. (See Master Agreement, § 6(a)).

39. CPT 283 elected not to terminate the transaction under the Swap Agreement upon LBHI's bankruptcy filing on September 15, 2008, which was an Event of Default. Instead, it waited.

40. CPT 283 was aware that LBSF was obligated to make a quarterly fixed premium payment to CPT 283 on September 22, 2008. Pursuant to the Swap Agreement, CPT 283 would not have been entitled to the Makewhole Amount if an Early Termination Date were designated in connection with an Event of Default resulting from LBHI's bankruptcy filing. (See Schedule, Part I(h)). By designating an Early Termination Date based on an Event of Default with respect to LBSF's failure to make payment under the Master Agreement, CPT 283 sought to avail itself of the Penalty Provision. Such manipulative action enabled CPT 283 to realize an undeserved windfall to the detriment of the Debtors' and their creditors. (See id.)

41. One week after LBHI's filing, LBSF failed to make the quarterly fixed premium payment due to CPT 283 on September 22, 2008, under the Swap Agreement. On September 23, 2008, CPT 283 sprang into action to take advantage of LBSF whose operations were in disarray due to LBHI's recent bankruptcy filing just days earlier and its own precarious financial situation. CPT 283 had to act quickly, however. If LBSF filed for bankruptcy prior to CPT 283 terminating the Swap Agreement for a failure to pay by LBSF, CPT 283 would not have been able to seek to avail itself of the Penalty Provision. Instead, CPT 283 could only have terminated the transaction under the Swap Agreement by reason of the ipso facto provision of

-12-

Section 5(a)(vii) of the Master Agreement, in which event the Penalty Provision would have been inapplicable. Accordingly, CPT 283 moved quickly and timed its termination of the Swap Agreement so that it occurred in the relatively brief period between the filing of the bankruptcy petitions by LBHI and LBSF.

    **F.    CPT 283 Calculated An Impermissible And Unenforceable Penalty Against Debtors Without Regard To Actual Loss And In Contravention Of Applicable Law**

    42.    The Penalty Provision is impermissible and unenforceable under both the laws of the State of New York and applicable bankruptcy law. The Penalty Provision is not designed to approximate actual damages and, indeed, has no bearing whatsoever to the economic reality of any costs or damages actually suffered by CPT 283.

    43.    At the time the transaction was entered into, it was clear both that (i) the parties were capable of ascertaining the probable loss of a contractual breach, and (ii) the Penalty Provision was plainly and grossly disproportionate to CPT 283's probable Loss in the event of an early termination.

    44.    Although the CPT 283 Claims each seek $43,830,089 from the estate, this figure bears no relation to the actual damages suffered by CPT 283. On the purported termination date, the transaction under the Swap Agreement was significantly in favor of LBSF, in the amount of approximately $67,327,208.

    45.    Accordingly, the application of the Penalty Provision would confer upon CPT 283 all of the benefits of the contract and none of the burdens. By its very terms, the Penalty Provision puts CPT 283 in every conceivable circumstance in a position better than CPT 283 would have been if the contract been performed. Therefore, the Penalty Provision constitutes a transparent penalty that is unenforceable under both New York and applicable bankruptcy law.

46. The proviso in Part I(h)(b) of the Schedule applies by its terms to an Early Termination Date designated as a result of an Event of Default with respect to LBSF described in Section 5(a)(i). Because the Penalty Provision is unenforceable, Part I(h)(b) is of no force or effect in its entirety. Accordingly, if no effect is to be given to the Penalty Provision, Section 6(e) applies by default to an Early Termination Date relating to a payment default by LBSF.

### G.  **Assured Failed to Perform Its Obligations Under the Policy**

47. Pursuant to the Policy, Assured "unconditionally and irrevocably" guaranteed to LBSF full and complete payment of the amounts due under the Swap Agreement, including amounts that are required to be paid by CPT 283 to LBSF in accordance with the terms of Section 6 of the Master Agreement as a result of early termination of the transaction thereunder

### FIRST CAUSE OF ACTION
### (Objections to Claims)

48. LBSF and LBHI hereby incorporate the foregoing paragraphs as if fully restated herein.

49. LBSF and LBHI hereby object to the CPT 283 Claims pursuant to section 502 of the Bankruptcy Code.

50. The CPT 283 Claims are not valid claims against LBSF and LBHI because the transaction under the Swap Agreement between CPT 283 and LBSF is terminated and LBSF and LBHI have no remaining obligations to CPT 283 under the Swap Agreement.

51. CPT 283's asserted damage calculation as reflected in the CPT 283 Claims is not commercially reasonable and represents an unenforceable penalty under applicable law.

52. Accordingly, the CPT 283 Claims should be disallowed in their entirety and expunged, and the Debtors hereby expressly reserve the right to further object to the CPT 283 Claims, or any other claims filed by CPT 283, on any other basis.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against CPT 283)

53. LBSF and LBHI hereby incorporate the foregoing paragraphs as if fully restated herein.

54. Under the Swap Agreement, CPT 283 was required to pay LBSF for any gains it enjoyed as a result of the early termination of the transaction under the Swap Agreement.

55. CPT 283 breached the Swap Agreement by failing to pay LBSF upon termination of the transaction under the Swap Agreement.

56. As a direct and proximate result of CPT 283's breaches of the Swap Agreement, LBSF has been deprived of a substantial sum of money in an amount not less than $67,327,208.

## THIRD CAUSE OF ACTION
### (Breach of Contract Against Assured)

57. LBSF and LBHI hereby incorporate the foregoing paragraphs as if fully restated herein.

58. Under the Policy, Assured was required to pay LBSF any and all amounts owed by CPT 283 to LBSF as a result of the early termination of the transaction under the Swap Agreement.

59. CPT 283 terminated the transaction under the Swap Agreement with LBSF in accordance with Section 6 of the Master Agreement.

60. CPT 283 breached the Swap Agreement by failing to pay LBSF a termination payment amount due and owed to LBSF as a result of the early termination of the transaction under the Swap Agreement.

61. Assured was aware of and consented to CPT 283's notice designating an Early Termination Date under the Swap Agreement.

62. Assured breached the Policy by failing to pay LBSF the amounts owed by CPT 283 to LBSF under the Swap Agreement.

63. As a direct and proximate result of Assured's breaches of the Policy, LBSF has been deprived of a substantial sum of money in an amount not less than $67,327,208.

**FOURTH CAUSE OF ACTION**
**(Turnover Under Section 542(a) of the Bankruptcy Code Against CPT 283 and Assured)**

64. LBSF and LBHI hereby incorporate the foregoing paragraphs as if fully restated herein.

65. Money owed to a debtor is property of such debtor's estate pursuant to section 541(a) of the Bankruptcy Code because the definition of estate property includes all legal and equitable interests of a debtor in property as of commencement of the case and any interest in property that the estate acquires after commencement of the case. 11 U.S.C. § 541(a).

66. The amounts owed to LBSF under the Swap Agreement and Policy constitute property of the LBSF estate because LBSF has a legal interest in them consistent with section 541(a) of the Bankruptcy Code.

67. The amounts owed to LBSF under the Swap Agreement and Policy constitute a debt that is property of the estate and that is matured and payable.

68. CPT 283 and Assured have no claim or right of setoff with respect to these amounts.

69. These amounts are identifiable.

70. These amounts are neither of inconsequential value nor inconsequential benefit to the LBSF's estate.

71. To date, although CPT 283 and Assured are in possession, custody, or control of such funds, CPT 283 and Assured have not returned these amounts to LBSF.

72. Accordingly, pursuant to section 542 of the Bankruptcy Code, LBSF is entitled to immediate payment of such amounts from CPT 283 and Assured to LBSF.

**FIFTH CAUSE OF ACTION**
**(Declaratory Judgment Against CPT 283 and Assured)**

73. LBSF and LBHI hereby incorporate the foregoing paragraphs as if fully restated herein.

74. The parties to this action are the parties who have or who may claim to have an interest that may be affected by the declaration requested.

75. This action is within the jurisdiction of this Court and LBSF and LBHI are entitled to declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

76. An actual controversy exists between LBSF and LBHI and CPT 283 and Assured, which is justiciable in character, and speedy relief is necessary to preserve the parties' respective rights.

77. The Court should declare that the Penalty Provision is unenforceable and that CPT 283's calculation of damages was not in compliance with applicable law, nor did it have any legitimate commercial or economic basis.

78. Unless this Court makes a declaration of the rights and obligations of the parties under the Swap Agreement, the estates of LBSF and LBHI will continue to suffer substantial harm.

## SIXTH CAUSE OF ACTION
**(Attorney's Fees, Costs and Litigation Expenses)**

79. LBSF and LBHI hereby incorporate the foregoing paragraphs as if fully restated herein.

80. The Swap Agreement is valid and enforceable against CPT 283 as a matter of law.

81. The Swap Agreement provides that CPT 283's failure to abide by its terms entitles LBSF and LBHI to an award of attorney's fees and reasonable expenses.

82. CPT 283's breach of contract constitutes a material breach of the Swap Agreement.

83. LBSF and LBHI have been forced to incur attorney's fees and expenses because of CPT 283's failure to abide by the terms of the Swap Agreement and its failure to calculate the damages in good faith.

84. LBSF and LBHI are thus entitled to an award of attorney's fees, costs and litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, LBSF and LBHI pray for judgment against CPT 283 and Assured as follows:

A. Sustaining LBSF and LBHI's objection to the CPT 283 Claims and disallowing and expunging such claims in their entirety;

B. Declaring that the Penalty Provision is unenforceable;

C. Determining that, pursuant to Section 6(e) of the Swap Agreement, CPT 283 owes LBSF a termination payment in the amount of $67,327,208;

D. Awarding default interest under the Swap Agreement in an amount to be determined at trial;

E. Awarding LBSF and LBHI attorney's fees, costs and other expenses incurred in connection with this action;

F. Awarding post-judgment interest (and where appropriate, pre-judgment interest) on the above-referenced amounts; and

G. Granting LBSF and LBHI such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 20, 2012

Respectfully submitted,

/s/ Jayant W. Tambe
Jayant W. Tambe
Aviva Warter Sisitsky
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Attorneys for the Plaintiffs LBHI and LBSF*